# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TITUS L. S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-04825-AFM <br><br> **MEMORANDUM OPINION AND ORDER REVERSING AND REMANDING DECISION OF THE COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying his application for supplemental security income. In accordance with the Court's case management order, the parties have filed briefs addressing the merits of the disputed issues. The matter is now ready for decision.

## BACKGROUND

On May 25, 2017, Plaintiff filed an application for supplemental security income. (Administrative Record ("AR") 224-232.) The application was denied. (AR 165-169.) On February 6, 2019, Plaintiff appeared with counsel at a hearing

---

[1] Plaintiff's name has been partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

conducted before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff and a vocational expert ("VE") testified. (AR 110-135.)

On March 14, 2019, the ALJ issued a decision finding that Plaintiff suffered from the following medically severe impairments: degenerative disc disease of the lumbar spine, major depressive disorder, reduced vision in the right eye, and borderline intellectual functioning. (AR 14.) The ALJ then determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: he can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk for six hours in an eight-hour day; can sit for six hours in an eight-hour day; bend, stoop, crouch, and crawl occasionally; can have no more than occasional contact with coworkers, supervisors, and the general public; and is precluded from performing detailed or complex tasks. (AR 18.) Relying on the testimony of the VE, the ALJ concluded that Plaintiff was able to perform jobs existing in significant numbers in the national economy, including the jobs of marker, cleaner, and bottle packer. (AR 21-22.) Accordingly, the ALJ determined that Plaintiff was not disabled from May 25, 2017 through the date of his decision. (AR 22.) The Appeals Council denied review (AR 1-7), rendering the ALJ's decision the final decision of the Commissioner.

## DISPUTED ISSUES

1. Whether the ALJ provided legally sufficient reasons for rejecting the opinion of Plaintiff's treating psychiatrist.
2. Whether the ALJ provided legally sufficient reasons for rejecting Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial

evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of his treating psychiatrist, Melvin Sigman, M.D. (ECF No. 19 at 7-15.) The Commissioner argues that the ALJ properly evaluated the opinion evidence under the new regulations, which do not attribute special weight to the opinion of a treating source. (ECF No. 21 at 3-4.)

**A. Relevant Medical Evidence**

Because this claim involves the ALJ's determination of Plaintiff's mental impairments, the Court's discussion of the evidence is focused on the medical records relevant to Plaintiff's mental health.

<u>Consultative Examination – September 2016</u>

On September 1, 2016, Bahareh Talei, Psy. D., performed a consultative psychological evaluation of Plaintiff in reference to Plaintiff's prior SSI application. Dr. Talei diagnosed Plaintiff with major depressive disorder, possible alcohol abuse, and borderline intellectual functioning. In Dr. Talei's opinion, Plaintiff was able to understand, remember, and carry-out short, simplistic instructions and make simplistic work-related decisions without special supervision. According to Dr. Talei, "due to learning impairment and mood disturbance," Plaintiff had a "mild inability" to understand, remember, and carry-out detailed instructions. In addition,

Dr. Talei opined that Plaintiff had a "mild inability" to interact appropriately with supervisors, coworkers, and peers. Dr. Talei assigned Plaintiff a Global Assessment of Functioning (GAF) score of 60. (AR 370-374.)

West Central Mental Health[2]

Beginning in June 2014, Plaintiff received mental health treatment through the West Central Mental Health Center under the "Full Service Partnership Program," which is described as an "intensive service program from persons diagnosed with severe persistent mental illness." (AR 525.) Pursuant to the program, Plaintiff received individual therapy, group therapy, and medical treatment. (*See* AR 398-490). He was diagnosed with Bipolar I disorder, most recent episode mixed, severe with psychotic features. (AR 525.)

Progress notes from December 2017 indicate that Plaintiff appeared nervous, tearful, and agitated. Plaintiff's therapist observed that Plaintiff had good grooming and eye contact; anxious motor activity; soft speech; unimpaired intellectual functioning and memory; and no apparent hallucinations. (AR 481.)

Dr. Sigman's treatment notes from April 2018 indicate that Plaintiff was recently hospitalized at LAC/USC Medical Center for "suicidality" after he ran out of his medication. Plaintiff reported that while in the hospital, he had a consultation with a gastroenterologist regarding his encopresis (fecal incontinence). Plaintiff was prescribed a rectal insertion of Proctozone and reported that since that treatment, he had not "had problems losing his bowels." (AR 477.) The April 2018 notes reflect that Plaintiff's mental status examination was generally normal. (AR 477.)

In treatment notes dated May 15, 2018, Dr. Sigman observed that Plaintiff "is still incontinent of feces. He soils his bed. ... His fear [of soiling himself] keeps him from doing a number of things," including entering relationships and working. (AR 473.) A mental status examination revealed no depression, mania or anxiety; no

---

[2] Although the record indicates that Plaintiff received treatment beginning June 2014 (*see* AR 407, 525), the earliest treatment records from West Central Mental Health are dated November 2017.

delusions or hallucinations; and Plaintiff denied suicidal ideation. Dr. Sigman renewed Plaintiff's prescription medication and recommended that he see a gastroenterologist regarding his fecal incontinence. (AR 473.)

Therapist's notes from May 2018 indicate that Plaintiff appeared nervous, worried, and agitated. Plaintiff's motor activity was anxious; his speech was soft; he was tearful; and his mood was dysphoric. The remainder of his mental status examination was normal. (AR 467.) Other treatment notes from May 2018 indicate that Plaintiff received Latuda and Restoril, which he reported helped him with his symptoms. His medication was increased. (AR 471.)

In June 2018, Plaintiff's therapist observed that Plaintiff was nervous, tearful and agitated. He exhibited anxious motor activity and soft speech. At the same time, the therapist noted that Plaintiff was oriented; presented with good grooming and eye contact; had unimpaired intellectual functioning and memory; and exhibited no apparent hallucinations. (AR 462.)

Records from August and September 2018 reflect that Plaintiff needed assistance getting to the grocery store. (AR 441-443, 451-459.)

Plaintiff underwent a full psychological assessment on September 22, 2018. (AR 389-405.) He complained of depression, paranoia, and auditory hallucinations. (AR 389-399.) A mental status examination revealed Plaintiff avoided eye contact; his motor activity was restless, agitated, and posturing; his speech was pressured, loud, and excessive; his mood was dysphoric, irritable, and anxious; and his affect was expansive, sad, and worried. Plaintiff's memory and intellectual functioning were unimpaired; there were no apparent disturbances in Plaintiff's perception, thought process, thought content, or behavior. (AR 489-490.) Plaintiff was diagnosed with "Bipolar I disorder, most recent episode mixed, severe with psychotic feature." (AR 405-406.)

On October 1, 2018, Dr. Sigman noted that Plaintiff experienced both "hypnagogic and regular hallucinations." (AR 428.) Plaintiff's mood was euthymic,

he evidenced no psychosis, and he denied suicidal ideation. With regard to Plaintiff's continuing encopresis, which had worsened, Dr. Sigman suggested that Plaintiff use diapers. (AR 428.) In a follow up on October 30, 2018, Plaintiff's mental status examination was unremarkable. Dr. Sigman noted that Plaintiff experienced depression and suicidality regularly. He recommended that Plaintiff continue with Latuda and Restoril. (AR 423.)

Some of the therapy notes from October through December 2018 indicate Plaintiff appeared nervous, teary, and agitated. His eye contact was "low"; his motor activity was anxious; his speech was soft; his mood was dysphoric; his memory was impaired. (*See* AR 407, 414, 416, 419, 425.) Other notes from the same period reveal Plaintiff had good or normal eye contact and unimpaired memory. (*See* AR 407, 412, 414, 416, 419.)

In progress notes dated November 28, 2018, Dr. Sigman indicated that Plaintiff was stable psychiatrically. However, Plaintiff reported that his incontinence "rules his life." Plaintiff told Dr. Sigman he was afraid to go to sleep because of his defecating in bed. Plaintiff's mental status examination was unremarkable, and Dr. Sigman continued Plaintiff on the same medication. (AR 411.)

Kedren Community Health Center

Plaintiff was initially seen at the Kedren Community Health Center on August 7, 2018. He complained of depression, anxiety, poor sleep, feeling hopeless, and angry outbursts. Plaintiff reported having been hospitalized at USC twice for depression. (AR 496, 501, 506, 518-519.) The initial treatment note from that date reflects that, other than a dysphoric mood, Plaintiff's mental status exam was normal. (AR 499-500.) However, the full assessment performed that date revealed the following: Plaintiff was disheveled; his mood was anxious and dysphoric; his motor

activity was restless and showed akathisia[3]; he exhibited excessive/irrational worry and guilt; he demonstrated auditory hallucinations; his speech was pressured; his thought process was loose; his concentration was fragmented; he demonstrated depersonalization; his remote memory was impaired; his judgment was moderately impaired; his insight was minimally impaired; and he was found to be disorganized. (AR 518-524.) He was diagnosed with major depressive disorder, recurrent episode, with psychotic features; alcohol use disorder, moderate; and cocaine use disorder, severe, in early or sustained remission. (AR 524.)

Follow up notes from September 2018 again indicate that Plaintiff met the criteria for Major Depressive Disorder, with Psychotic Features. Plaintiff requested and was provided resources for outpatient alcohol rehab. (AR 507-508.) Thereafter, Plaintiff was placed into adult cognitive behavioral therapy for treatment. (AR 510.)

In November 2018, Plaintiff was seen by Kevin Zhang, M.D. Other than a sad mood, Plaintiff's mental status examination was unremarkable. (AR 512-514.) Dr. Zhang prescribed Benadryl, Wellbutrin,[4] and Prazosin.[5] (AR 515; *see* AR 42, 53.)

A January 2019 mental status examination revealed a depressed mood, but otherwise was normal. (AR 58.) After a follow-up appointment with Dr. Zhang, Plaintiff's Wellbutrin and Prazosin dosages were increased. (AR 60.)

<u>Dr. Sigman's Opinion</u>

In his March 2018 RFC questionnaire, Dr. Sigman indicated that he had treated Plaintiff monthly for "several years." He noted that Plaintiff is a patient with Los Angeles County's West Central Mental Health Services "ESP team," which Dr. Sigman described as a more intensive program than offered to general clinic

---

[3] Akathisia is a neuropsychiatric syndrome characterized by subjective and objective psychomotor restlessness. It is a recognized side effect of antipsychotic medication. *See* https://www.healthline.com/health/akathisia.

[4] Wellbutrin is an antidepressant. *See* https://medlineplus.gov/druginfo/meds/a695033.html.

[5] Prazosin treats high blood pressure. *See* https://medlineplus.gov/druginfo/meds/a682245.html.

patients. He diagnosed Plaintiff with bipolar disorder, depression, post-traumatic stress disorder, and claustrophobia. (AR 392.)

As for clinical findings, Dr. Sigman indicated Plaintiff suffered from notable depression with suicidal ideation, auditory hallucinations, fear around people and withdrawal. Plaintiff was prescribed Latuda and Restoril. (AR 392.) In Dr. Sigman's opinion, Plaintiff was markedly limited in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; the ability to work in proximity to others without being distracted by them; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to travel in unfamiliar places or use public transportation; and the ability to tolerate normal levels of stress. (AR 394-395.) Plaintiff suffered from mild limitations in several other areas, including the ability to complete a normal work-day and work-week, without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to ask simple questions or request assistance; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to be aware of normal hazards and take appropriate precautions; the ability to set realistic goals or make plans independently of others. (AR 394-395.) Further, Dr. Sigman opined that Plaintiff's mental impairment would cause him to be absent from work more than four days per month. (AR 396.) Finally, Dr. Sigman indicated that Plaintiff also suffered from involuntary bowel movements, that there was no known physical cause for this issue, and that Plaintiff soils himself regularly. (AR 396.)

Treatment notes from the same date reflect the same opinions. Among other things, Dr. Sigman observed that Plaintiff is distractible; experiences racing thoughts; his memory is impaired; and lacks control of his bowels, defecating involuntarily at least once a day, often in his clothes. (AR 480.)

**B. The ALJ's Decision**

In summarizing the mental health evidence, the ALJ discussed a consultative psychological evaluation performed by Dr. Talei on September 1, 2016. As the ALJ noted, Dr. Talei diagnosed Plaintiff with major depressive disorder; possible alcohol abuse; and borderline intellectual functioning. In setting out Plaintiff's severe impairments, the ALJ adopted Dr. Talei's diagnoses of major depressive disorder and borderline intellectual functioning. The ALJ noted Dr. Talei's opinions that Plaintiff was able to understand, remember, and carry-out short, simplistic instructions and make simplistic work-related decisions without special supervision; but had a "mild inability" to understand, remember, and carry-out detailed instructions and to interact appropriately with supervisors, coworkers, and peers. (AR 19-20, citing AR 370-374.)

Next, the ALJ stated that on November 28, 2016, State agency psychiatric consultant Patricia Heldman, M.D., opined that Plaintiff had mild limitations in activities of daily living and maintaining social functioning; moderate limitations in maintaining concentration, persistence, or pace; and was able to understand and remember short simple instructions sufficient to perform unskilled work. (AR 20, citing AR 143-144, 147-148.)[6]

The ALJ acknowledged the March 2018 opinion of Dr. Sigman, in particular that in Dr. Sigman's opinion, Plaintiff had "marked limitations in his mental work-related abilities." (AR 20, citing AR 392-397.) Nevertheless, the ALJ found the

---

[6] Dr. Heldman's opinion, which was rendered in relation to Plaintiff's prior SSI application, could not have taken into consideration the records reflecting Plaintiff's mental condition in 2017, 2018, or 2019.

9

opinions of Drs. Talei and Heldman to be persuasive because they "are generally consistent with one-another and are well-supported based upon [Plaintiff]'s limited treatment history, the generally normal objective findings, and his activities of daily living." (AR 20.) The ALJ found Dr. Sigman's opinion "unpersuasive based upon the limited treatment in the medical record in addition to the overall generally good objective findings and activities of daily living." (AR 20.) In the following paragraph, the ALJ explained:

> The claimant informed Dr. Talei on September 1, 2016, that he had current and ongoing psychiatric and psychological services. The claimant reported that he was psychiatrically hospitalized for one month in 2014. [Exhibit 5F [AR 370-374]]. However, the medical record only shows that the claimant had participated in counseling or therapy treatment beginning in November of 2017 [Exhibit 11F [AR 398-459]]. The medical record shows that the claimant underwent an adult mental health triage on August 7, 2018. The claimant informed that he had been receiving outpatient treatment at USC hospital for depression 1 year prior. He reported 2 hospitalizations for about a week each within the past year for depression, which are not supported by the medical record. The claimant denied current suicidal ideation [Exhibit 12F5-16 [AR 495-506]]. The medical record shows that the claimant had then started case management, therapy, and psychiatric medication management treatment for major depressive disorder [Exhibits 12F17-25 and 13F8 [AR 507-515, 523]].

(AR 20.) The ALJ concluded that the medical record supported no more than moderate limitations in functioning, which were adequately accommodated in the RFC limiting Plaintiff to unskilled work with only occasional contact with others. (AR 20-21.)

**C. Relevant Law**

In his brief, Plaintiff cites 20 C.F.R. §§ 404.1527 and 416.927 – which established a hierarchy for medical opinion evidence and provided that a treating physician's opinions are afforded special weight. (ECF No. 19 at 8-9.) Plaintiff also correctly points out that the Ninth Circuit has repeatedly held that an ALJ must provide clear and convincing reasons to reject an uncontradicted doctor's opinion and specific and legitimate reasons where the record contains a contradictory opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

The Commissioner, however, urges that the rules for the evaluation of medical evidence at the administrative level have been revised for disability applications filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). According to the Commissioner, Dr. Sigman's opinion was not entitled to special weight under the new regulations. (ECF No. 21 at 3-4.)

Because Plaintiff filed his SSI application on May 25, 2017, it is governed by the revised rules. The new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight ... to any medical opinion(s) ... including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The revised rules provide that the Social Security Administration will evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources,

including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). While the ALJ will articulate how she considered the most important factors of supportability and consistency, an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). Further, where a medical source provides multiple opinions, an ALJ is not required to articulate how she considered each individual opinion, but may address that medical source in a single analysis of the relevant factors set forth above. 20 C.F.R. § 416.920c(b)(1).

The Ninth Circuit has not yet addressed whether or how the new regulations alter analysis of the adequacy of an ALJ's reasoning. Thus, it is not clear whether the Ninth Circuit precedent requiring an ALJ provide "clear and convincing" or "specific and legitimate reasons" before rejecting a treating source's medical opinions remains viable. *See Allen T. v. Saul*, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards."); *Thomas S. v. Comm'r of Soc. Sec.*, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020) ("The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy.").[7]

Nevertheless, the Commissioner's new regulations still require the ALJ to explain his or her reasoning and to specifically address how he or she considered the

---

[7] As a general matter, this Court must defer to the new regulations, even where they conflict with prior judicial precedent, unless the prior judicial construction "follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *See Allen T.*, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 981-982 (2005)).

supportability and consistency of the opinion. *See* 20 C.F.R. §§ 404.1520c, 416.920c. As always, the ALJ's reasoning must still be free of legal error and supported by substantial evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Thus, even assuming that the Ninth Circuit's more stringent requirements are inapplicable here, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to the physicians' opinions and whether the reasons were supported by substantial evidence. *See Thomas S.*, 2020 WL 5494904, at *2.

**D. Analysis**

The ALJ found Dr. Sigman's opinion unpersuasive in light of Plaintiff's "limited treatment in the medical record," the "overall generally good objective findings," and Plaintiff's "generally good activities of daily living." (AR 20.) The ALJ's reliance on "good objective findings" indicates that he determined that Dr. Sigman's opinion lacked objective medical support. *See* 20 C.F.R. § 416.920c(c)(1). The ALJ's reliance on Plaintiff's limited treatment and activities of daily living indicates that the ALJ concluded that Dr. Sigman's opinion was not consistent with other evidence in the record. *See* 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1).

The ALJ's characterization of Plaintiff's mental health records as revealing "overall generally good objective findings" is not supported by substantial evidence. The ALJ's conclusion is based upon Plaintiff's generally normal mental status examinations. (AR 16-17, 20.) The ALJ's discussion of the mental status examinations, however, amounts to repeatedly citing the same six pages of the record. (*See* AR 16-17, citing 489-490, 499-500, 513, 523.) Of those six pages, only two are from West Central Mental Health Services (where Dr. Sigman treated Plaintiff), and those two reflect a single mental status examination performed on September 22, 2018. (AR 489-490.) The remaining four pages are from Kedren Community Health Center and include part of a mental status examination performed

on August 7, 2018 (AR 499-500, 523) and one performed on November 8, 2018. (AR 513.) The only other mention of Plaintiff's mental health treatment records from West Central Mental Health is an observation that Plaintiff "participated in counseling or therapy treatment beginning in November of 2017" (AR 20) – an observation intended to undermine Plaintiff's allegation that he had been receiving ongoing mental health treatment since 2014 or 2016. As support for the foregoing sentence, the ALJ cites Exhibit 11F, which is the entire set of records from West Central Mental Health. Notably absent from the ALJ's decision is any mention, let alone discussion, of Plaintiff's bipolar disorder, fecal incontinence disorder, or the numerous positive findings beyond a cursory reference to auditory hallucinations "on one or two occasions." (AR 17.) As the Ninth Circuit has made clear, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see generally Holohan v. Massanari*, 246 F.3d 1195, 1207-1208 (9th Cir. 2001) (an ALJ may not reject a physician's opinion by selectively relying on some evidence while ignoring other evidence). Considering the ALJ's failure to address significant evidence, the Court cannot find his conclusory characterization of the objective findings to be supported by substantial evidence.

The ALJ's characterization of Plaintiff's treatment record as "limited," is also not supported by substantial evidence. While the mental health record includes detailed treatment notes beginning November 2017, it repeatedly indicates that Plaintiff had been receiving mental health treatment from West Central Mental Health since 2014. (*See* AR 422-439, 525.) Moreover, the mental health records from West Central Mental Health from November 2017 through 2018 are numerous, reflecting intensive treatment including weekly psychotherapy and prescription psychotropic medication to treat bipolar disorder. (AR 398-490.) The mental health

records from Kedren Community Clinic reveal additional mental health treatment from August 2018 through the date of the hearing. (*See* AR 28-109, 491-524). The ALJ's decision suggests that he did not believe Plaintiff's claim that he was psychiatrically hospitalized in 2014 or that he had been hospitalized twice at USC sometime in 2017 because the record lacked documents confirming those hospitalizations. (AR 20.) To the extent the ALJ may have relied upon the lack of evidence corroborating Plaintiff's assertions to conclude Plaintiff's subjective testimony was not credible, such a conclusion does not undermine the existence of the records that are present in the record – the vast majority of which the ALJ failed to address. As set forth in detail above, Plaintiff's mental health treatment from 2017 through December 2019 – which includes evidence of bipolar disorder, depression, weekly therapy, monthly office visits with his treating physician, prescription psychotropic medication, and symptoms including hallucinations and unexplained fecal incontinence – is not fairly characterized as limited. *See, e.g., Ramos v. Berryhill,* 2017 WL 4564695, at *3 (C.D. Cal. Oct. 10, 2017) (ALJ erred in characterizing mental health record while failing to acknowledge the plaintiff's consistent, long-standing diagnoses of recurrent major depression and failing to discuss notations in the treating source reports indicating that plaintiff was significantly limited); *Zauss v. Colvin*, 2016 WL 4500797, at *7 (C.D. Cal. Aug. 26, 2016) (ALJ erroneously characterized mental health treatment records, ignoring evidence of serious mental health condition).[8]

      Finally, the ALJ rejected Dr. Sigman's opinion citing Plaintiff's "generally good activities of daily living and a good ability to interact with others" (AR 20), suggesting that he found Dr. Sigman's limitations inconsistent with Plaintiff's

---

[8] As noted, it appears that Plaintiff's mental health treatment extends several years before the records contained in the AR. Moreover, to the extent that Plaintiff's mental health treatment may have gaps in it, the Ninth Circuit has stated that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted).

demonstrated abilities. As to his daily activities, the ALJ stated that Plaintiff "goes shopping in stores for groceries about once per month"; is able to pay bills and count change; has no problems caring for his personal hygiene and grooming needs; prepares simple meals for himself on a daily basis; does laundry and cleans; goes outside once or twice a week; is able to use public transportation; and his "hobbies include watching television." (AR 16-17, citing AR 275-279.)

Generally, inconsistency between a physician's opinion and a claimant's demonstrated abilities is a proper reason for discounting a physician's opinion. *See Taylor v. Colvin,* 667 F. App'x 256, 256–257 (9th Cir. 2016); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–601 (9th Cir. 1999). Here, however, the ALJ failed to specify which of Plaintiff's activities of daily living he considered inconsistent with which of Dr. Sigman's opinions, and it is not clear to the Court that they are. As an initial matter, most of the activities identified by the ALJ reflect Plaintiff's physical abilities (or limitations). Furthermore, it is not evident how Plaintiff's ability to shop once a month,[9] maintain his hygiene and grooming,[10] clean or do laundry, cook simple meals, watch television, and use public transportation are inconsistent with Dr. Sigman's opinion that Plaintiff's mental impairment caused marked limitation in his ability to perform activities within a schedule, maintain regular attendance, sustain an ordinary routine without special supervision, work with others without being distracted, accept instructions and respond appropriately to criticism from supervisors, or tolerate normal levels of stress. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding that ALJ erred in rejecting medical opinions based upon daily activities, explaining "[a]lthough [plaintiff]

---

[9] In addition, the ALJ's recitation fails to account for the evidence indicating that Plaintiff required assistance from a caseworker to perform tasks including grocery shopping. (*See* AR 418, 432, 443, 444, 461, 469, 483).

[10] It does not appear that the ALJ's characterization of Plaintiff's ability to maintain hygiene takes into account Plaintiff's fecal incontinence.

16

performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments. A claimant need not be completely incapacitated to receive benefits.") (citing *Smolen v. Chater,* 80 F.3d 1273, 1284 n.7 (9th Cir. 1996)).

The Court concludes that the ALJ failed to properly evaluate the supportability and consistency of Dr. Sigman's opinion, and the ALJ's reasons for finding that opinion unpersuasive are not supported by substantial evidence. Further, because crediting some or all of those opinions would have required inclusion of additional limitations in the residual functional capacity hypothetical presented to the VE, *see Ghanim*, 763 F.3d at 1166, the Court cannot conclude that the ALJ's error was harmless.[11]

## REMEDY

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. . . . If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Dominguez*, 808 F.3d at 407 (citation and internal quotation marks omitted).

Although the Court has found error as discussed above, the record on the whole is not fully developed, and factual issues remain outstanding. The issues concerning Plaintiff's alleged disability "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see*

---

[11] Because reversal is warranted based upon the ALJ's error in considering Dr. Sigman's opinions, the Court declines to address Plaintiff's remaining contention.

*also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Accordingly, the appropriate remedy is a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[12]

IT IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings consistent with this opinion.

DATED: 1/26/2021

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE

---

[12] It is not the Court's intent to limit the scope of the remand.